UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Sid Brooks

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| GARY LEE BRYAN | ) | 05-38302-SBB |
| | ) | Chapter 7 |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| M. STEPHEN PETERS, Chapter 7 Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 10-1189-SBB |
| JANEL K. BRYAN; ARTHUR CLARK; | ) | |
| AURORA LOAN SERVICES, LLC; | ) | |
| SPECIALIZED LOAN SERVICING, LLC; | ) | |
| and | ) | |
| VECTRA BANK COLORADO, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came before the Court at a trial held on Plaintiff's Complaint on December 14 and 15, 2011. Having heard the testimony and reviewed the evidence of the parties, the Court enters the following findings, conclusions, and Order.

**I.    SUMMARY**

On February 18, 2010, M. Stephen Peters, the duly appointed Chapter 7 Trustee ("Trustee") in Debtor Gary Lee Bryan's bankruptcy case, filed a Complaint commencing this adversary proceeding. The Trustee seeks a declaration regarding the validity, priority, and extent of the liens and interests in certain real property and in the net proceeds arising from the Trustee's sale of such property. Having heard the evidence and considered the legal arguments of the parties, the Court concludes that, at the time the Trustee sold the property: (1) Defendant Arthur Clark had never established a lien against the property, (2) the lien of Defendant Aurora Loan Services, LLC, had first priority, and (3) the lien of Defendant Specialized Loan Servicing, LLC, had second priority.

## II.   BACKGROUND[1]

Gary Lee Bryan, the Debtor in the above-captioned bankruptcy case ("Debtor"), and his wife, Janel Bryan, formed the Bryan Family Trust ("Trust" or "Sham Trust")[2] on July 1, 1999.[3]

On June 30, 2000, Gary Lee Bryan and Janel Bryan purchased a real property legally described as LOT 11, BLOCK 11, THE NORTH RANCH AT KEN CARYL PHASE 3, COUNTY OF JEFFERSON, STATE OF COLORADO, and known by street address as 1 Finch, Littleton, Colorado 80127 (the "Property").[4]  On January 11, 2001, Gary Lee and Janel Bryan conveyed the Property to the Sham Trust. At that time, a first Deed of Trust to Washington Mutual Bank ("WAMU") encumbered the Property for $203,000.[5]

The property was conveyed from the Sham Trust back to Gary Lee and Janel Bryan on February 21, 2003.[6]  Also on February 21, 2003, Gary Lee and Janel Bryan executed a deed of trust to WAMU for a refinance loan in the amount of $250,000 ("WAMU Refinance").[7]  Then, on that same day, Gary Lee and Janel Bryan executed a Quit Claim Deed ("First Q.C. Deed") conveying their interests back to the Sham Trust again ("February 21, 2003 Fraudulent Transfer").[8]

On June 16, 2003, a deed of trust to Vectra Bank ("Vectra") was negotiated, executed,

---

[1] The majority of the background facts set forth below are gleaned from the Proposed Findings of Fact and Conclusions of Law submitted by the Trustee on January 6, 2012 (docket # 122), which, in turn, are predicated, to a significant extent, on the Statement of Stipulated Facts set forth in the Joint Pretrial Statement filed October 21, 2011 (docket #109). Some factual statements are also gleaned from Arthur Clark's proposed findings of fact. Due to Defendant Janel Bryan's lack of cooperation in preparing the Joint Pretrial Statement, the Court at the pretrial hearing in this proceeding struck the objections to the Joint Pretrial Statement set forth in Defendant Janel K. Bryan's Pretrial Statement. (*See* Oct. 25, 2011 Minutes of Proceeding, docket # 111.) The Court also struck any challenges to the Statement of Stipulated and Undisputed Facts set forth in the Joint Pretrial Statement and ruled that it would adopt and incorporate those Stipulated and Undisputed Facts going forward. (*See* Oct. 25, 2011 Minutes of Proceeding, docket # 111.)

[2] The Court has previously ruled that the Bryan Family Trust was a sham trust in the "Sham Trust Adversary," Adversary Proceeding Number 11-1102. *Peters v. Bryan*, 415 B.R. 454 (Bankr. D. Colo. 2009), *aff'd but rev'd on other grounds*, case no. 09-cv-1366, 2010 WL 3894035 (D. Colo. Sept. 29, 2010).

[3] Statement of Stipulated Facts, Joint Pretrial Statement (docket # 109) [hereinafter "Stip. Facts"] ¶ 4.

[4] Stip. Facts ¶ 5; Trustee's Ex. 1.

[5] Stip. Facts ¶ 6; Trustee's Ex. 2.

[6] Stip. Facts ¶ 7; Trustee's Ex. 3.

[7] Stip. Facts ¶ 8.

[8] Stip. Facts ¶ 9; Trustee's Ex. 4.

and delivered by the Sham Trust, in which the Property was pledged as collateral for a loan from Vectra.[13] Shortly thereafter, on June 1, 2004, Arthur Clark obtained a judgment against Gary Lee Bryan ("Clark Judgment").[14] Mr. Clark recorded a transcript of the Clark Judgment with the Clerk and Recorder of Jefferson County, Colorado, at reception no. F2060946 on July 15, 2004 ("Clark Transcript of Judgment").[15] On July 15, 2004, record title to the Property was held by the Sham Trust.[16]

On January 25, 2005, the Sham Trust's interest in the Property was transferred back to Janel Bryan alone via quit claim deed ("Second Q.C. Deed").[17] On January 31, 2005, Janel Bryan individually negotiated, executed, and delivered an adjustable rate note ("Note") in the original face amount of $560,000 to Vectra Bank, which immediately assigned the Note to Lehman Brothers' Bank, FSB.[18]

On the same day, January 31, 2005, Janel and Gary Lee Bryan negotiated, executed and delivered a deed of trust ("Vectra Deed of Trust") pledging the Property to Vectra Bank for Janel Bryan's individual obligations under the Note.[19] Vectra immediately assigned the Vectra Deed of Trust to Lehman Brother's Bank, FSB.[20]

---

[13] Stip. Facts ¶ 10.

[14] Stip. Facts ¶ 11.

[15] Stip. Facts ¶ 12; Janel Bryan's Ex. A.

[16] Trustee's Ex. 4.

[17] Stip. Facts ¶¶ 14, 15; Trustee's Ex. 5. The Second Q.C. Deed was recorded in the real property records for Jefferson County, Colorado, on February 7, 2005, at reception no. F2169519.

[18] Stip. Facts ¶ 16; Aurora's Exs. B and F.

[19] Stip. Facts ¶ 17; Aurora's Ex. C. The proceeds from the Vectra Deed of Trust refinanced and satisfied the two existing encumbrances on the Property as follows:

(a) First Deed of Trust to WAMU in the amount of $245,896.83, signed by Gary Lee and Janel Bryan; and
(b) Second Deed of Trust to Vectra Bank in the amount of $255,930.55, pledging the Property as collateral for Gary Lee Bryan's personal obligation to Vectra Bank.

(Stip. Facts ¶ 18; Aurora's Ex. D; Clark's Ex. X.)

Janel Bryan received the remaining cash proceeds of $49,002.45 from the Vectra Deed of Trust. (Stip. Facts ¶ 19.) The Vectra Deed of Trust was recorded in the real property records of Jefferson County, Colorado, on February 7, 2005, at reception no. F2169520. (Stip. Facts ¶ 20; Aurora's Ex. C.)

[20] The Assignment of the Vectra Deed of Trust was recorded in the real property records of Jefferson County, Colorado, on February 7, 2005, at reception no. F2169521.

Janel Bryan then executed another quit claim deed ("Third Q.C. Deed") transferring the Property back to the Sham Trust.[21] The Third Q.C. Deed was recorded subsequent to the Vectra Deed of Trust and the Assignment thereof.[22]

Attorneys Title Guaranty Fund, Inc. ("Attorneys Title"), underwrote the title insurance for the Vectra Deed of Trust. Kymn Walter, general counsel for Attorneys Title, testified that the title search performed by his company did not note that the Clark Transcript of Judgment affected title because Gary Lee Bryan was not a record title owner of the Property from the date of the recording of the Clark Transcript of Judgment through the date of the title search. Mr. Walter also testified that under Colorado's Title Standards, a transcript of judgment does not attach to a real property unless and until the property is conveyed to a judgment debtor.

On May 9, 2005, the Sham Trust executed a Quit Claim Deed ("Fourth Q.C. Deed") conveying the Property to both Janel and Gary Lee Bryan.[23] Janel and Gary Lee Bryan then obtained a home equity line of credit ("HELOC") from Vectra Bank with a maximum draw amount of $55,000. Further, that same day, Janel and Gary Lee Bryan executed a deed of trust (junior to the Vectra Deed of Trust) in favor of and for the benefit of Vectra, pledging the Property as collateral for the HELOC ("HELOC Deed of Trust").[24] Also on the same day, May 9, 2005, Gary Lee and Janel Bryan then executed yet another quit claim deed ("Fifth Q.C. Deed") conveying the Property back to the Sham Trust.[25] The Fifth Q.C. Deed was recorded on May 19, 2005.[26]

Lehman Brothers Bank, FSB, is now known as Aurora Bank, FSB,[27] and Aurora Loan Services, LLC ("Aurora") is a wholly owned operating subsidiary of Aurora Bank, FSB. Aurora is the duly authorized servicing agent for the subject loan, and holder of the Note and security interest created by the Vectra Deed of Trust, on behalf of Aurora Bank FSB and its successors

---

[21] Stip. Facts ¶ 22. The Third Q.C. Deed was recorded on February 7, 2005, in the real property records of Jefferson County, Colorado, at reception no. F2169522. (Trustee's Ex. 6.)

[22] *See* Note 7, *supra*.

[23] Stip. Facts ¶ 23. The Fourth Q.C. Deed was recorded on May 19, 2005, in the real property records for Jefferson County, Colorado, at reception no. 2005021001. (Trustee's. Ex. 7.)

[24] Stip. Facts ¶ 24; Janel Bryan's Ex. G.

[25] Stip. Facts ¶ 25; Trustee's Ex. 8.

[26] Trustee's Ex. 8.

[27] Stip. Facts ¶ 27.

and assigns.[28] Aurora presently retains physical possession of the Note.[29]

The Note and Vectra Bank Deed of Trust (hereinafter "Aurora Note and Deed of Trust") provide for payment of the holder's attorney fees and costs.[30]

Specialized Loan Servicing ("Specialized") is the holder of the HELOC Deed of Trust.[31]

Gary Lee Bryan filed for bankruptcy under Chapter 13 on October 3, 2005. The case was converted to Chapter 7 on November 2, 2006.

The instant adversary proceeding is the third of three adversary proceedings commenced within the overall bankruptcy proceeding. The first adversary proceeding, Adversary Proceeding No. 07-01063-SBB, was commenced by Mr. Clark against Gary Lee Bryan objecting to discharge. The second, adversary proceeding, Adversary Proceeding No. 08-01102 ("the Sham Trust Adversary"), was brought by the Trustee against Gary Lee Bryan; Janel Bryan; Vectra Bank Colorado, N.A.; Auto Source, LLC; and Brad Hunt as Trustee of the Bryan Family Trust. That case sought recovery of assets on behalf of the estate, primarily, but not exclusively, from the Sham Trust. Resolution of the issues in that case was effected pursuant to a Memorandum Opinion and Order, dated June 4, 2009.

Pursuant to an Order of the Court in the Sham Trust Adversary, the Trustee sold the Property.[25] He received $851,656.18 in net proceeds from the sale ("Net Proceeds").[26] Also per the Court's Order, Janel Bryan, as a tenant in common owner of the Property, retains a 50% interest in the Net Proceeds, or approximately $425,828.09.[28]

In connection with sale of the Property, the Trustee had a title search conducted, which search revealed the Clark Transcript of Judgment. At no time prior to the title search did Mr. Clark assert anything other than an unsecured claim against Gary Bryan or advise the Trustee that he had a lien on the Property, despite having been actively involved in adversary proceeding number 11-1102, which case required the Court to make determinations as to the validity of transfers in and out of the Sham Trust. Indeed, as of the date of this Order, Mr. Clark has not

---

[28] Stip. Facts ¶ 28.

[29] Stip. Facts ¶ 29.

[30] Aurora's Exhibit B, at ¶ 5; Aurora's Exhibit C, at ¶ 22.

[31] Stip. Facts ¶ 26. Mr. Clark explained at trial that it was not until the completion of the Sham Trust Adversary that he recalled holding any sort of lien on the Property.

[25] Case No. 05-38302 (docket #245); Stip. Facts ¶ 1.

[26] Stip. Facts ¶ 2.

[28] Stip. Facts ¶ 3.

filed a proof of claim asserting a secured priority interest in any property belonging to Mr. Bryan.[29] Mr. Clark is the largest creditor in the underlying bankruptcy case.[26]

## III. ISSUE

The central question in this case is whether the transfer of Gary Lee Bryan's interest in the Property to the Sham Trust on February 21, 2003, was void as to Mr. Clark on that date. Put another way, did Mr. Clark establish a valid, perfected, and enforceable lien when he filed his transcript of judgment against the Debtor because a prior fraudulent transfer of property was void?

## IV. CONCLUSIONS OF LAW – PRIORITY OF LIEN

### A. Parties' Positions

Mr. Clark contends that the February 21, 2003 Fraudulent Transfer was void *ab initio* as to him under COLO. REV. STAT. § 38-10-111. Because it was void, Mr. Clark asserts, title to Gary Lee Bryan's share of the Property remained in Mr. Bryan's name even after the February 21, 2003 Fraudulent Transfer was made to the Sham Trust. Thus, Mr. Clark argues, his recording of the Clark Transcript of Judgment on July 15, 2004, established a lien on the Property which has priority over all subsequently recorded liens, including the lien established by the filing of the Vectra Deed of Trust on February 7, 2005.

The Trustee, Aurora, and Janel Bryan dispute that Mr. Clark has a first and prior interest in the Net Sale Proceeds. They contend that, where a fraudulent transfer is alleged, the transfer is merely voidable – not void *ab initio*. Because Mr. Clark never initiated legal action to establish that the February 21, 2003 Fraudulent Transfer was fraudulent, they assert, he never established that the transfer was void as to Gary Bryan's interest and, therefore, the recorded judgment never attached to the Property.

### B. Case Law

The parties have cited to a number of cases in support of their respective positions. The Court has reviewed those cases, and others, and believes that a discussion of the relevant cases is merited.

#### 1. *Security Services*

In *Security Servs., Ltd. v. Equity Mgmt., Inc.*, 851 P.2d 921, 921-22 (Colo. Ct. App. 1993), William and Deborah Kennedy and Glenn Geological Foundation conveyed property

---

[29] *See* Arthur Clark's Proof of Claim, which was filed February 6, 2006, in the main bankruptcy case.

[26] Stip. Facts ¶ 13.

("Property B") to Sierra National Trust ("Sierra") in 1988. Thereafter, in August 1988, William and Deborah Kennedy filed suit against Sierra, the trustee of Sierra, and the Glenn Geological Foundation for rescission of the trust or removal of the trustee. That suit was settled by an agreement which included a provision transferring the trusteeship of Sierra to William Kennedy.

In April 1989, Equity obtained judgment against William Kennedy, individually, in an unrelated action. Equity recorded its transcript of judgment against William Kennedy in February 1990. In July 1990, Equity brought action to void the three deeds transferring Property B to Sierra as transfers in fraud of creditors. Equity filed a *lis pendens* against Property B. Around the same time, the Kennedys filed a petition for bankruptcy, listing Property B as their own asset. The Kennedys' debts were discharged in bankruptcy in November 1990.

In December 1990, a successor in interest to a creditor of the Kennedys, which had obtained a deed of trust against Property B prior to the conveyances to Sierra, filed a foreclosure action in Larimer County. In the foreclosure certificate, the successor in interest stated that to the best of its knowledge the Property B was owned by William and Deborah Kennedy.

On February 12, 1991, Equity's action to void the three deeds was dismissed for failure to prosecute. On February 27, 1991, Property B was sold to Mary McConnell and Steve Barnes pursuant to the foreclosure sale.

On May 7, 1991, Security Services loaned Sierra and William and Deborah Kennedy $4,000. Repayment of the loan was secured by a second deed of trust against the Property signed by William and Deborah Kennedy, individually, and by William Kennedy as trustee of Sierra ("Security Services DOT"). Security Services recorded the deed of trust on May 13, 1991.

Also on May 13, 1991, Equity and Security Services both filed notices of intent to redeem with the public trustee for the purpose of redeeming Property B from the February 27, 1991 foreclosure sale.

In evaluating the priority of liens, the Court of Appeals held that a fraudulent transfer under COLO. REV. STAT. § 38-10-117 was not void *ab initio*, but rather voidable.[28] "A fraudulent transferee may convey good title to a bona fide purchaser for value, and until some action is taken to uncover a fatal flaw in the transaction, a voidable transaction operates without operation."[31] Therefore,

> a recorded transcript of judgment does not automatically create a
> lien upon property which a judgment debtor has allegedly
> fraudulently conveyed to a third party. Instead, . . . the judgment

---

[28] *Security Servs.*, 851 P.2d at 923.

[31] *Id.*

7

> creditor must successfully prosecute a fraudulent conveyance lawsuit before the recorded transcript of judgment attaches as a valid lien against the property.[32]

In *Security Services*, the Court of Appeals concluded that when Equity recorded its transcript of judgment against William Kennedy, that recorded judgment became a lien upon all of the real property of the William Kennedy pursuant to COLO. REV. STAT. § 13-52-102(1).[33] It did not, however, become a lien against property owned by *Sierra*. Indeed, because the suit in which Equity filed the *lis pendens* against Property B was dismissed before Security Services recorded its lien, Equity's lien against Property B (which was recorded as being owned by Sierra) became invalid. Since Security Services had no recorded notice that Property B was subject to any other lien, Security Services stood in the position of a bona fide purchaser for value. As the only lienor of record, Security Services was entitled to redeem.

      2.     *Shepler v. Whalen*

In *Shepler v. Whalen*, a 2005 case in which *Security Services* is extensively cited, the Colorado Supreme Court held:

> Where the judgment debtor has neither a legal nor equitable interest in [real] property, recording a judgment does not create a lien on the property because there is no interest on which the lien could attach. Where it is alleged that property titled in the name of another has been fraudulently conveyed by the judgment debtor, the creditor must file an action to uncover the fraud. Such an action, along with a notice of lis pendens, does establish the creditor's lien on the fraudulently conveyed property. Accordingly, a junior creditor who successfully exposes a fraudulent transfer by filing suit takes priority over senior creditors holding judgments recorded prior to the junior creditor uncovering the fraud.

*Shepler v. Whalen*, 119 P.3d 1084, 1085-86 (Colo. 2005). In that case, four judgment creditors – Lamb, Shepler, Thornock, and Whalen (in that order) – filed transcripts of judgment against the judgment debtor, Altberger, and his corporation, of which he was president and sole owner.

---

[32] *Id.*

[33] COLO. REV. STAT. § 13-52-102(1) provides, in relevant part:

All goods and chattels, lands, tenements, and real estate of every person against whom any judgment is obtained in any court of record in this state, either at law or in equity, . . . which judgment . . . is for any debt, damages, costs, or other sum of money are liable to be sold on execution to be issued upon such judgment. A transcript of the judgment record of such judgment, certified by the clerk of such court, may be recorded in any county; and from the time of recording such transcript, and not before, the judgment shall become a lien upon all the real estate, not exempt from execution in the county where such transcript of judgment is recorded, owned by such judgment debtor or which such judgment debtor may afterwards acquire in such county, until such lien expires.

Upon learning that the judgment debtor transferred $353,000 from the corporation to pay off the mortgage on a townhome titled in his wife's name, Whalen filed a motion for declaration of equitable lien or constructive trust and sought issuance of a writ of execution on the townhome. The other three judgment creditors intervened.

The district court found that the transfer was fraudulent and done with intent to hinder, delay, or defraud creditors of the judgment debtor and/or his corporation. The court imposed a constructive trust on the residence and established an equitable lien in favor of the creditors. After a hearing on priority, the district court set the priority of liens in the order that the judgments were recorded, making Whalen's judgment the last to be satisfied.

Whalen appealed, and the court of appeals reversed, finding that Whalen should be given priority over the others. The court rejected the argument that Colorado's race-notice statute, COLO. REV. STAT. § 13-52-102, should be applied to establish priority as per the district court's decision. Instead, the court held that "'when a junior judgment creditor obtains the debtor's equitable interest in real property, through an equitable action in the nature of a creditor's bill, senior judgment liens do not attach' and the creditor who brought the action has priority."[34] On appeal, the Colorado Supreme Court affirmed the court of appeals' decision, stating,

> [A]lthough section 38-10-117, C.R.S. 2004 provides that conveyances made with intent to hinder, delay, or defraud creditors "shall be void," the statute has been interpreted to mean that the conveyance is *voidable* rather than void . . . . As between the grantor and the grantee, a fraudulent conveyance is valid "until some action is taken to uncover the fatal flaw in the transaction." . . . Consequently, the fraudulent transfer of funds from Altberger to the lender on behalf of his wife, the borrower, was presumptively valid until Whalen brought the action to uncover the fraud. At the time Shepler and Thornock recorded their judgments, the transfer was considered complete, leaving [Alberger's wife] with an unencumbered interest in the property and Altberger without any interest. Because the debtor retains no interest, "a recorded transcript of judgment does not automatically create a lien upon the property which a judgment debtor has allegedly fraudulently conveyed to a third party." . . . Before judgment can attach, the "creditor must successfully prosecute a fraudulent conveyance lawsuit."[35]

The Court concluded, therefore, that the judgments initially recorded by Shepler, Thornock, Whalen, and Lamb did not attach to the townhouse. The race-notice statute did not apply in this instance.

       3.    *Alagna*

---

[34] *Shepler v. Whalen*, 119 P.3d 1084, 1086 (Colo. 2005)(quoting *Whalen v. Shepler* 104 P.3d 243, 246 (Colo. Ct. App. 2004))(emphasis in original).

[35] *Id.* at 1088 (citations omitted).

Mr. Clark argued in closing that this Court's decision in *In re Alagna*, 107 B.R. 301 (Bankr. D. Colo. 1989), a decision regarding the validity of a debtor's claim of exemption in ERISA-qualified benefits plans, supports his contention that the February 21, 2003 Transfer was void *ab initio*. In *Alagna*, the Court noted that COLO. REV. STAT. § 38-10-111 "is one of several Colorado statutes which concern the avoidance of fraudulent conveyances and recovery of transferred property. This statute specifically focuses on the use of self-settled trusts in that context."[36] The Court when on to explain, "This statute, essentially, obviates the need to prove intent to defraud and is limited to then existing creditors. In a sense, it creates a presumption of fraud."[37]

        4.    *Alberico*

*Alberico v. Health Managements Sys., Inc.*, 5 P.3d 967, 970 Colo. Ct. App. 2000) involved questions as to the validity of certain liens filed by the Colorado Department of Health care Policy and Financing (DHF).

In 1992, DHF determined that plaintiff's mother was eligible for Medicaid benefits to assist her in paying for nursing home expenses. In evaluating whether plaintiff's mother had the less than $2,000 in resources required to qualify for Medicaid assistance, DHF properly excluded mother's primary residence from its calculation of mother's resources.

In 1993, plaintiff, acting pursuant to a power of attorney, conveyed his mother's residence via quit claim deed to an inter-vivos revocable trust for nominal consideration. Plaintiff's mother was beneficiary of the trust. Plaintiff recorded the deed. No one advised DHF of the transfer. By that time, DHF had correctly paid in excess of $16,000 in benefits on behalf of plaintiff's mother.

In March 1994, after it was determined that plaintiff's mother could not expect to return to her home to live, DHF directed its agent, Health Management Systems (HMS) to file a lien on mother's residence to secure reimbursement for her benefits. HMS did so, and subsequently filed updated liens as additional benefits were paid. During this time, though plaintiff continued to complete benefits applications for his mother, he failed to disclose the transfer of the residence, even though he was required to do so.

By the time plaintiff's mother died in 1996, benefits exceeding $100,000 had been paid on her behalf. The residence was sold, and $112,839 in proceeds were placed in escrow. Plaintiff sued DHF and HMS, seeking a determination that the liens were invalid. On summary judgment, the district court ruled in the defendants' favor, concluding that the conveyance of the residence was void as to them under COLO. REV. STAT. § 38-10-111. Plaintiff appealed.

---

[36] *Alagna*, 107 B.R. at 314.

[37] *Id.*

The Colorado Court of Appeals, in ruling on the issue, concluded that, after it was determined that plaintiff's mother would not return to live in her residence, the defendants were statutorily authorized pursuant to 42 U.S.C. § 1396p(a)(1)(b)(ii) and its related regulations to file a lien against her residence to secure recovery of benefits correctly paid.

The Court held that the "express language of § 38-10-111 invalidated the conveyance to the trust as to DHF because it was a creditor at the time of the transfer."[38] The Court concluded, "It necessarily follows that the benefits were thus correctly paid on behalf of plaintiff's mother and the liens to secure those payments were valid under 42 U.S.C. § 1396p(a)(1)(b)(ii)."[39]

### C.  Discussion

The issue in the case at bar is similar to that presented in *Security Services*. In that case, the Court of Appeals' decision hinged upon the meaning of COLO. REV. STAT. § 38-10-117.[40] That statute provides:

> (1) Every conveyance or assignment in writing or otherwise of any estate or interest in lands, goods, or things in action or of any rents and profits issuing thereupon, and every charge upon lands, goods, or things in action or upon the rents and profits thereof made with the intent to hinder, delay, or defraud creditors or other persons of their lawful suits, damages, forfeitures, debts, or demands, and every bond or other evidence of debt given, suits commenced, or decree or judgment suffered with the like intent as against the person so hindered, delayed, or defrauded shall be void.
>
> (2) This section shall not apply to any transfer made or obligation incurred on or after July 1, 1991.[41]

Despite the plain language of the statute, however, Colorado Courts interpreted the word "void" in section 38-10-117(1) to mean "voidable."

As Mr. Clark notes, the case at bar does not involve the application of COLO. REV. STAT. § 38-10-117, which is inapplicable to transfers made after July 1, 1991. Rather, the central issue here is whether COLO. REV. STAT. § 38-10-111 applies to void the February 21, 2003 Fraudulent Transfer as to Mr. Clark. That statute provides: "All deeds of gift, all conveyances, and all transfers or assignments, verbal or written . . . of real property . . . made in trust for the use of the

---

[38] 5 P.3d at 970.

[39] *Id.*

[40] Indeed, as Mr. Clark has noted, *Security Services* does not even discuss COLO. REV. STAT. § 38-10-117.

[41] COLO. REV. STAT. § 38-10-117(1).

person making the same shall be void as against the creditors existing of such person."[42]

Mr. Clark contends that under *Alberico*, the February 21, 2003 Fraudulent Transfer was void as to him and title remained in Gary Lee Bryan's name; however, *Alberico* is distinguishable from the case now pending.[43]

In *Alberico*, pursuant to operation of statute, plaintiff's mother became a creditor when benefits were first correctly paid on her behalf – prior to the 1993 transfer. Thus, plaintiff's mother was an existing creditor of DHF at the time of the transfer, and the transfer was void as to DHF. In the case at bar, at the time of the February 21, 2003 Fraudulent Transfer to the Sham Trust, Mr. Clark had not yet established his status as a creditor of Gary Lee Bryan's, as he had not yet prosecuted his case against Mr. Bryan to judgment.[44] Further, Mr. Clark can point to no statutory authority that would retroactively afford him creditor status at some time prior to entry of the judgment. Thus, Mr. Clark was not an "existing creditor," at the time the transfer was made. The transfer was not, therefore, void as to him pursuant to COLO. REV. STAT. § 38-10-111. Thus, in order to attach a lien to the Property, Mr. Clark would have had to file an action to establish a fraudulent conveyance to the Sham Trust.

Unlike conveyances to self-settled trusts, which are void *ab initio* as to *existing creditors*, "[f]raudulent conveyances are not void *ab initio* in Colorado; they are voidable. The fraudulent transferee can convey good title to a bona fide purchaser for value."[45] Further, the reasoning in *Shepler* requiring a judgment creditor to file an action to uncover a fraudulent transfer of property to a third party and file a notice of *lis pendens* in order to secure a priority lien position on that property logically extends to transfers to self-settled trusts. In the absence of requiring creditor to prosecute a suit and file a *lis pendens* in order to ensure priority status, there would be no recording to alert subsequent bona fide purchasers for value of potential clouds on title. Further, since sections 38-10-111 and 38-10-117 both concern fraudulent transfers and appear in the same title and article of the Colorado Revised Statutes, rules of statutory interpretation would

---

[42] COLO. REV. STAT. § 38-10-111.

[43] Mr. Clark also contends that this Court's interpretation of COLO. REV. STAT. § 38-10-111 in *Alagna* supports his position. However, the Court's conclusion that the language of section 38-10-111 obviates the need to prove intent to defraud existing creditors is not a conclusion that the language obviates the need for a person who has not yet established that a debt is owed to him to take action to liquidate the putative debt in a court before he can record a lien against the putative judgment debtor's property. An individual who, prior to a putative debtor's transfer to a self-settled trust has neither (a) prosecuted a case against the putative debtor to judgment nor (b) recorded a lis pendens to alert potential buyers of property transferred to the trust that he asserts a claim to the property, has not established that he is an "existing creditor" of the trust settlor.

[44] *See Greco v. Pullara*, 44 P.2d 383, 384 (Colo. 1968)(general creditor does not become judgment creditor until damages are liquidated and judgment entered in her favor; therefore, statute of limitations to prosecute fraudulent conveyance action under COLO. REV. STAT. § 38-10-117does not start to run until judgment is entered).

[45] *In Appel v. Steamboat Ski Corp. (In re Smythe)*, 32 B.R. 726, 737 (D. Colo. 1983)(citing *Brooks v. Black*, 123 P. 131 (Colo. 1912)).

suggest that they should be interpreted consistently.[46]

Here, the case is very much like *Security Services*, in that at the time that Mr. Clark filed his judgment transcript, title to the Property was recorded in the Bryan Family Trust – not Gary Lee Bryan's name. Unlike Equity in *Security Services*, however, Mr. Clark never recorded a *lis pendens* in Jefferson County on the Property, nor did he ever commence a lawsuit to set aside any transfer of the Property as fraudulent.[47] Therefore, Mr. Clark never established that the transfer was fraudulent and that judgment attached to the Property. Sadly, Mr. Clark is yet another victim of the fraud perpetuated by Janel and Gary Bryan.

Based on the foregoing, the Court concludes that Vectra took the property without recorded notice of any lien, and stood in the position of a bona fide purchaser for value. Aurora, as holder of the note and security interest created by the Vectra Deed of Trust, had the first-priority lien on the Property pursuant to COLO. REV. STAT. § 38-35-109, while Specialized had the second-priority lien.[48] Aurora, therefore, now has the first-priority lien on the Net Proceeds, and Specialized has the second-priority lien.[49]

---

[46] *See B.G.'s, Inc. v. Gross*, 23 P.3d 691, 694 (Colo. 2001) ("Because the legislature is presumed to intend that statutes concerning the same subject or comprising a comprehensive statutory scheme be consistent and harmonious . . . consideration of other statutes dealing with the same subject is one type of extrinsic aid that can be useful in deciding questions of statutory interpretation.")(citations omitted).

[47] Mr. Clark has not recorded a judgment capable of establishing any sort of lien on the Property (let alone a priority lien), because he has not commenced a lawsuit that would establish that transfer from Gary Lee Bryan and Janel Bryan to the Trust was fraudulent. Under the reasoning of *Shepler*, unless Mr. Clark successfully does so, the February 21, 2003 Fraudulent Transfer to the Trust is considered complete and presumptively valid, and he has no lien at all. Further, even if Mr. Clark were now to commence and successfully prosecute a suit to establish a fraudulent transfer under COLO. REV. STAT. § 38-10-111, his judgment lien would follow in priority to the liens already recorded on the Property under the general race-notice recording statute, COLO. REV. STAT. § 38-35-109.

[48] COLO. REV. STAT. § 38-35-109 provides, in relevant part:

> All deeds, powers of attorney, agreements, or other instruments in writing . . . encumbering, or affecting the title to real property, . . . and certified copies of orders, judgments, and decrees of courts of record may be recorded in the office of the county clerk and recorder of the county where such real property is situated; . . . No such unrecorded instrument or document shall be valid against any person with any kind of rights in or to such real property who first records and those holding rights under such person, except between the parties thereto and against those having notice thereof prior to acquisition of such rights. This is a race-notice recording statute. In all cases where by law an instrument may be filed in the office of a county clerk and recorder, the filing thereof in such office shall be equivalent to the recording thereof, and the recording thereof in the office of such county clerk and recorder shall be equivalent to the filing thereof.

COLO. REV. STAT. § 38-35-109(1).

[49] Arthur Clark raised additional arguments, including an argument about marshaling, that the Court need not address in light of its ruling.

**V.     OTHER CLAIMS**

In the instant case, the Trustee also seeks to recover administrative expenses from Mr. Clark, and Mr. Clark seeks setoff of such expenses. These claims are not properly before the Court in this adversary proceeding as such matters must be brought in the main bankruptcy case pursuant to 11 U.S.C. § 503.

**VI.    ORDER**

It is, therefore,

ORDERED that the relief sought in Plaintiff's Complaint is hereby GRANTED. In accordance therewith, the Court hereby

DECLARES that Aurora Loan Services, LLC had the first-priority lien on the real property legally described as LOT 11, BLOCK 11, THE NORTH RANCH AT KEN CARYL PHASE 3, COUNTY OF JEFFERSON, STATE OF COLORADO, and known by street address as 1 Finch, Littleton, Colorado 80127. The Court

FURTHER DECLARES that Specialized Loan Serving, LLC, had the second-priority lien on the real property legally described as LOT 11, BLOCK 11, THE NORTH RANCH AT KEN CARYL PHASE 3, COUNTY OF JEFFERSON, STATE OF COLORADO, and known by street address as 1 Finch, Littleton, Colorado 80127. The Court

FURTHER DECLARES that Arthur Clark never established a lien on the real property legally described as LOT 11, BLOCK 11, THE NORTH RANCH AT KEN CARYL PHASE 3, COUNTY OF JEFFERSON, STATE OF COLORADO, and known by street address as 1 Finch, Littleton, Colorado 80127.

IT IS FURTHER ORDERED that the Trustee shall immediately distribute the principal and interest due to Aurora under the Aurora Note and Deed of Trust in the amount of $638,195.30 as of December 14, 2011, together with per diem interest in the amount of $84.38 from December 15, 2011, through the date of payment.

IT IS FURTHER ORDERED that Aurora shall submit and serve an affidavit of attorneys' fees and costs for fees incurred in this matter and payable under the Aurora Note and Deed of Trust within fourteen (14) days of this Order. Parties shall have seven days thereafter within which to file any objections thereto.

IT IS FURTHER ORDERED that Plaintiff's Second Claim for Relief is DENIED, as administrative costs are not properly before the Court in this proceeding.

IT IS FURTHER ORDERED that Arthur Clark's first and second counterclaims are hereby DENIED.

Dated this 9th day of March, 2012.

BY THE COURT:

Sidney B. Brooks,
United States Bankruptcy Judge